**CASE NO. 25-1315**

---

# IN THE UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

---

GARY TEDERICK and LISA TEDERICK,
*Plaintiffs-Appellants,*
v.

LOANCARE, LLC,
*Defendant-Appellees.*

---

On Appeal from the United States District Court
For the Eastern District of Virginia
Case No. 2:22-cv-00394-RAJ-DEM

---

## OPENING BRIEF OF APPELLANTS

---

Anthony J. Majestro
Graham B. Platz
POWELL & MAJESTRO PLLC
405 Capitol Street, Suite 807
Charleston, WV 25301
(304) 346-2889
amajestro@powellmajestro.com
gplatz@powellmajestro.com

Stephen G. Skinner
SKINNER LAW FIRM
115 E. Washington Street
Charles Town, WV 25414
(304) 725-7029
sskinner@skinnerfirm.com

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................ 1

INTRODUCTION................................................................................... 1

JURISDICTIONAL STATEMENT .......................................................... 2

STATEMENT OF ISSUE ........................................................................ 2

STATEMENT OF CASE.......................................................................... 2

    I. Factual Background .................................................................. 2

    II. Procedural History.................................................................. 7

SUMMARY OF ARGUMENT................................................................. 13

STANDARD OF REVIEW ...................................................................... 16

ARGUMENT .......................................................................................... 17

    I.    The WVCCPA is a remedial statute to be interpreted liberally consistent with its overarching design ................... 18

    II.   The district court erred in imposing a requirement that a consumer alleging a violation of sections 46A-2-127 and 46A-2-128 prove that the defendant *intended* to improperly charge the consumer .......................................... 20

        A. Adding a requirement that a consumer must prove intent either ignores or is inconsistent with numerous provisions of the WVCCPA. ................................................. 21

i

B.  The district court's decision improperly amends the WVCCPA to include substantive requirements that were not enacted by the Legislature.....................................23

C.  The district court relied on non-binding authorities that do not support summary judgment ......................................28

D.  Even if intent is a requirement (it is not), the Tedericks have shown sufficient evidence to establish intent when viewed in a light most favorable to them ..............................37

E.  The district court's non-findings regarding whether LoanCare is a "debt collector" and whether it correctly applied Plaintiffs' payments cannot support summary judgment ...............................................................................38

CONCLUSION ......................................................................................... 41

STATEMENT REGARDING ORAL ARGUMENT ................................ 42

# TABLE OF AUTHORITIES

**Cases**                                                                 **Page**

*Rice v. Green Tree Servicing, LLC,*
    2015 WL 5443708 (N.D. W. Va. Sept. 15, 2015) ................................ 10

*Perrine v. Branch Banking & Trust Co.,*
    2018 WL 11372226 (N.D. W. Va. Sept. 25, 2018) ........................ 10, 11

*Reyes v. Waples Mobile Home Park Ltd. P'ship,*
    91 F.4th 270 (4th Cir. 2024) .............................................................. 16

*Jacobs v. N.C. Admin. Office of the Courts,*
    780 F.3d 562 (4th Cir. 2015) .............................................................. 16

*Libertarian Party of Va. v. Judd,*
    718 F.3d 308 (4th Cir. 2013) .............................................................. 16

*Anderson v. Liberty Lobby, Inc.,*
    477 U.S. 242 (1986) ............................................................................ 16

*Tolan v. Cotton,*
    572 U.S. 650 (2014) ............................................................................ 16

*Williamson v. Sch. Bd.,*
    2025 U.S. Dist. LEXIS 66140 (E.D. Va. March 17, 2025) ................ 17

*Studco Bldg. Sys. US, LLC v. 1st Advantage Fed. Credit Union,*
    133 F.4th 264 (4th Cir. 2025) ............................................................ 17

*Variety Stores, Inc. v. Wal-Mart Stores, Inc.,*
    888 F.3d 651, 659 (4th Cir. 2018) ...................................................... 17

*Dunlap v. Friedman's, Inc.,*
    213 W. Va. 394, 582 S.E.2d 841 (2003) ........................................ 18, 19

*Harless v. First Nat'l Bank in Fairmont*,
    162 W. Va. 116, 246 S.E.2d 270 (1978) ............................................. 18

*Vanderbilt Mortg. & Fin., Inc. v. Cole*,
    230 W. Va. 505, 740 S.E.2d 562 (2013) ............................................. 18

*State ex rel. 3M Co. v. Hoke*,
    244 W. Va. 299, 852 S.E.2d 799 (2020) ....................................... 18, 19

*State ex rel. McGraw v. Scott Runyan Pontiac-Buick*,
    194 W. Va. 770, 461 S.E.2d 516 (1995) ............................................. 19

*State ex rel. McGraw v. Telecheck Servs.*,
    213 W. Va. 438, 582 S.E.2d 885 (2003) ............................................. 19

*Barr v. NCB Mgmt. Servs.*,
    227 W. Va. 507, 711 S.E.2d 577 (2011) ............................................. 19

*Boczek v. Pentagon Fed. Credit Union*,
    725 F. Supp. 3d 542, 546 (N.D. W. Va. 2024) ................................... 20

*Bourne v. Mapother & Mapother*, P.S.C.,
    998 F. Supp.2d 495, 505 (S.D. W. Va. 2014) .................................... 20

*Neidig v. Valley Health Sys.*,
    ___ W.Va. ___, 2025 W. Va. LEXIS 224 (June 10, 2025) ................. 24

*Brooke B. v. Ray C.*,
    230 W. Va. 355, 738 S.E.2d 21 (2013) ............................................... 24

*Blue Shield of Va. v. McCready*,
    457 U.S. 465, 477 (1982) ..................................................................... 24

*Morgan v. Amex Assurance Co.*,

352 Or. 363, 287 P.3d 1038 (2012) ..................................................... 24

*Hinkle v. Safe-Guard Prods. Int'l, Ltd. Liab. Co.*,
    839 F. App'x 770 (4th Cir. 2020) .......................................................... 26

*Mallory v. Mortg. Am., Inc.*,
    67 F. Supp. 2d 601 (S.D. W. Va. 1999) ................................................ 27

*LTD Fin. Servs., L.P. v. Collins*, No. 18-0008,
    2019 W. Va. LEXIS 85 (Mar. 15, 2019) ................................................ 27

*Horton v. Pro. Bureau of Collections of Maryland, Inc.*,
    238 W. Va. 310, 794 S.E.2d 395 (2016) ................................................ 27

*Price v. Higher Educ. Loan Auth. of Mohela*,
    No. CC-40-2022-C-179 (W. Va. Cir. Ct. Putnam Cnty. 2024) ............ 34

*Thomas v. Firestone Tire & Rubber Co.*,
    266 S.E.2d 905, 909 (W. Va. 1980) ...................................................... 34

*Chapman v. TD Bank N.A.*,
    2025 U.S. Dist. LEXIS 84185 (S.D. W. Va. May 2, 2025) ................. 35

*Manning v. Wells Fargo Bank, N.A.*,
    2009 WL 10709758 (N.D. W. Va. Sept. 24, 2009) .............................. 36

*McNeely v. Wells Fargo Bank*,
    115 F. Supp. 3d 779 (S.D. W. Va. 2015) .............................................. 36

*Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich, L.P.A.*,
    559 U.S. 573, 130 S. Ct. 1605 (2010) .................................................. 38

*Moore v. Equitrans, Ltd. P'ship*,
    27 F.4th 211, 225 (4th Cir. 2022) ........................................................ 39

*Delebreau v. Bayview Loan Servicing, LLC,*
    770 F. Supp. 2d 813, 819, n.4 (S.D. W. Va. 2011), *aff'd on other*
    *grounds*, 680 F.3d 412 (4th Cir. 2012) ................................................ 39

*Edge v. Roundpoint Mortg. Servicing Corp.,*
    2024 U.S. Dist. LEXIS 176226 (N.D. W. Va. Sep. 27, 2024).............. 40

*Alexander v. Carrington Mortg. Servs., LLC,*
    23 F.4th 370 (4th Cir. 2022) .............................................................. 40

*Pennell v. Wells Fargo Bank N.A.,*
    2012 U.S. Dist. LEXIS 96426, 2012 WL 2873882, at *8 (S.D. Miss.
    July 12, 2012), *aff'd*, 507 Fed. App'x 335 (5th Cir. 2013) .................. 40

## Statutes

W. Va. Code § 46A-2-127 ................................................................ *Passim*

W. Va. Code § 46A-5-101 ........................................................................ 21

W. Va. Code § 46A-5-108 ........................................................................ 22

W. Va. Code § 46A-5-109 ........................................................................ 22

W. Va. Code § 46A-2-128 ................................................................ *Passim*

W. Va. Code § 46A-2-125 ........................................................................ 25

W. Va. Code § 46A-4-109 ........................................................................ 25

W. Va. Code § 46A-6-102 ........................................................................ 25

W. Va. Code § 46A-6-110 ........................................................................ 26

W. Va. Code § 46A-6G-2 .......................................................................... 26

W. Va. Code § 6A-5-103 ................................................................. 26

W. Va. Code § 46A-5-105 ............................................................... 26

W. Va. Code § 46A-6G-5 ................................................................ 26

W. Va. Code § 46A-2-139 ............................................................... 26

W. Va. Code § 46A-7-111 ............................................................... 26

W. Va. Code § 46A-2A-104 ............................................................. 26

15 U.S.C. § 1692(k) ....................................................................... 38

## Other Authorities

Fed. R. Civ. P. 56(a) ..................................................................... 16

Fed. R. Civ. P 12 ........................................................................... 36

Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2720.1 (4th ed. 2016 & Supp. 2021) ....................................... 39

# INTRODUCTION

Plaintiffs/Appellants Gary and Lisa Tedrick were overcharged for interest on their home because Defendant/Appellant LoanCare, LLC misapplied their loan payments. After LoanCare refused to correct the erroneous charges, they brought suit. After rejecting three attempts to dismiss their claims under the West Virginia Consumer Credit Protection Act ("WVCCPA"), the district court did an about face and granted summary judgment for LoanCare characterizing this case as "no more than a billing dispute."[1] In granting summary judgment for LoanCare, it reasoned that "at most, LoanCare was merely wrong. And . . . simply being wrong is not conduct for which the [WVCCPA] covers."[2] But, here it is the district court that is wrong, because wrongly charging excess interest is sufficient to trigger liability—under the WVCCPA.

The district court's insistence that the Tedericks show intentional conduct or make a case for fraud is contrary to the language of the WVCCPA, its purpose, and numerous binding decisions of the Supreme Court of Appeals of West Virginia. This Court should reverse.

_____

[1] JA2752.

[2] JA2753.

1

## JURISDICTIONAL STATEMENT

The district court had subject matter jurisdiction over this case under the Class Action Fairness Act, 28 U.S.C. § 1332(d). The district court's February 24, 2025, order granting summary judgment and dismissing the Appellant's remaining claims is a final order, and, consequently, this Court has jurisdiction over this appeal under 28 U.S.C. § 1291.

## STATEMENT OF ISSUE

Whether the district court erred in interpreting W.Va. Code §§ 46-2-127, 46A-2-128 as requiring proof of knowledge, intent, fraudulent conduct or "something more" than violating the express statutory prohibitions in those sections.

## STATEMENT OF CASE

### I.    Factual background.

In September of 2002, the Tedericks built their family home in Hedgesville, West Virginia.[3]  In March of 2004, they refinanced their

---

[3] Unless otherwise indicated, these facts are taken from the district court's February 24, 2025, *Memorandum Opinion and Order Granting LoanCare's Motion for Summary Judgment*, JA2743-2747.

mortgage loan with a note backed by a deed of trust held by the Federal National Mortgage Association ("Fannie Mae").

The terms of the loan required the Tedericks to make scheduled monthly payments of $875.36 to the note holder beginning May 1, 2004, with interest charged on unpaid principal until the full amount of the principal has been paid.[4]  Under the terms of the note, "each monthly payment will be applied as of its scheduled due date and will be applied to interest before principal."[5] But the note also provided for "the right to make payments of Principal at any time before they are due."[6]

A payment of Principal only is known as a "Prepayment."[7] To make a Prepayment under the terms of the note, the Tedericks must have "made all the monthly payments due under the Note," and they had to notify the lender in writing when making a prepayment.[8] The note further provides that "[u]pon receipt of a Prepayment, the Note holder will use the Prepayments to reduce the amount of Principal that I owe

---

[4] JA0402.

[5] *Id.*

[6] JA0403.

[7] *Id.*

[8] *Id.*

3

under this Note."[9]  Their deed of trust further specifies that "voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note."[10]

To avoid accruing additional interest, the Tedericks frequently made prepayments during the life of the loan.  The Tedericks often wrote one check containing their monthly payment and a prepayment amount, specifying in the memo line that a prepayment amount was included in the total." They used this strategy to decrease the amount of interest that would otherwise accrue because, under the terms of the note, the Tedericks did not owe interest on the loan until the scheduled monthly payments were due.

The note and deed of trust used the form "Fannie Mae/Freddie Mac UNIFORM INSTRUMENT[S]."[11]  Fannie Mae has Servicing Guidelines ("Guidelines") that address the order in which a lender or servicer should apply scheduled monthly payments and prepayments.[12]  In addition to explaining how to apply payments under different sets of circumstances,

---

[9] *Id.*

[10] JA0410.

[11] *See generally* JA0402-0424.

[12] JA0425-0426.

4

the Guidelines make clear that payments should be applied "in the order specified in the security instrument" and that "[t]he servicer must accept and apply and additional principal payment . . . identified by the borrower as such for a current mortgage loan."[13]

The dispute between the Tedericks and LoanCare is one of order of application. The Tedericks, relying on the language found in their Note and Deed of Trust, maintain that their prepayments should have been applied to their outstanding principal *before* the next month's monthly payment was applied. LoanCare maintains the opposite, and that it was permitted to hold the Tedericks prepayment until *after* the first of the month.

Between 2005 and 2020 the Tedericks made 180 payments containing both a scheduled monthly payment and a Prepayment ("combined payment") before the monthly payment due date. On at least 152 occasions, the Tedericks' loan servicer failed to apply the Prepayment and scheduled monthly payment in the correct order. Instead of applying the Prepayment, then the scheduled monthly payment, the servicer applied the scheduled monthly payment, then the Prepayment.

---

[13] JA0428; JA0434.

5

Around April 2019, LoanCare became the subservicer of the Tedericks' mortgage loan and began accepting and applying their loan payments. At which time, the Tedericks contacted LoanCare, explained the previous misapplication of prepayments, requested that LoanCare correct their account to accurately reflect the amount of interest owed on the loan, and received assurances from a LoanCare representative named Tiffany that "the problem was rectified." But LoanCare never corrected the account, made no changes to the account, and went on to apply the Tedericks' final sixteen combined payments in the order of the scheduled monthly payment first and the Prepayment second. Because LoanCare misapplied their combined payments, the Tedericks claim LoanCare charged them undue interest.

Frustrated with the continued misapplication of their Prepayments and LoanCare's refusal to respond to their repeated requests for correction, the Tedericks requested a payoff statement in September of 2020. That same month, the Tedericks paid off their mortgage loan in full.

## II.    Procedural History

The Tedericks filed suit against LoanCare in September of 2022 in the United States District Court for the Eastern District of Virginia.[14] Their complaint raised three claims, a violation of the WVCCPA (Count I), and two common law claims, unjust enrichment (Count II) and conversion (Count III).[15]

LoanCare moved to dismiss for failure to state a claim.[16]  The district court dismissed the "fraud-based" WVCCPA claims and unjust enrichment claim without prejudice and granted leave to amend, but it denied LoanCare's motion to dismiss the conversion claim and remaining statutory WVCCPA claims.[17]

The Tedericks filed their Second Amended Complaint on October 25, 2023.[18]  LoanCare again moved for dismissal.[19]  The district court again dismissed the unjust enrichment and conversion claims, but this

---

[14] JA0018-0088.

[15] JA0022-0026.

[16] JA0089-0134.

[17] JA0374; JA0376; JA0383; JA0386.

[18] JA0387-0401.

[19] JA0460-0487.

time, it allowed all WVCCPA claims to proceed.[20]   LoanCare moved for

reconsideration,[21] which the district court denied.[22]

Over the next year, the parties proceeded to conduct discovery.  The

parties also briefed class certification, which was never ruled on by the

Court.[23]   On November 22, 2024, LoanCare moved for summary

judgment.[24]  On February 24, 2025, the Court granted the motion and

entered final judgment.[25]  On March 26, 2025, the Plaintiffs filed the

instant appeal.[26]

The district court considered the viability of Plaintiffs' WVCCPA

claims on four occasions.  In the response to the first motion to dismiss,

the district court rejected LoanCare's claim that it was not engaged in

debt collection as defined in WVCCPA, noting that "[t]he issue of whether

or not [the defendant] acted as a 'debt collector' is best resolved by a

---

[20] JA0649-0658.

[21] JA0659-0660; JA0704-0719.

[22] JA0843-0849.

[23] JA0007 (*See* Doc. Nos. 52, 54, 55, 56).

[24] JA0850-0886.

[25] JA2743-2757.

[26] JA2758. While the notice of appeal references the prior two dismissal orders, Plaintiffs have chosen to appeal only the dismissal of their WVCCPA claims.

jury."[27]   The district court dismissed the Tedericks' "fraud-based" WVCCPA claims because they "fail[ed] to identify any individuals involved in any alleged misapplication, fail[ed] to specify the date or time of any alleged misapplication."[28]  But the district court distinguished the remaining WVCCPA claims under W. Va. Code § 46A-2-128 because the Tedericks pled "facts aligning with the prohibited conduct in subsection (d)."  Specifically, LoanCare "charged them interest beyond that owed under the Note and Deed of Trust."[29]

In their amended complaint, the Tedericks "simplified [their WVCCPA claim] to avoid explicitly alleging that LoanCare made 'false statements' or engaged in a 'fraudulent . . . or deceptive act or practice.'"[30] Still, the district court found "the nature of their claim has not changed."[31]  But the district court  allowed the WVCCPA claim to proceed—whether based in fraud or not—because this time the "Second Amended Complaint sufficiently identifie[d] the allegedly fraudulent

---

[27] JA0371 (citation and internal quotation omitted).

[28] JA0652.

[29] JA0374.

[30] JA0651-0652.

[31] *Id*.

billing statements, the dates on which LoanCare sent those statements, and how LoanCare allegedly misapplied their combined payments."[32] The district court ultimately refused to dismiss the WVCCPA claims under §§ 127 and 128 because the parties' different interpretations of the account history "is purely of factual significance[.]"[33] And, the court concluded: "In this case, the Tedericks have pled facts plausibly alleging that the monthly statements are a "false representation . . . of the character, extent or amount of a claim against" them. W. Va. Code § 46A-2-127(d)."[34]

The third time the district court considered the WVCCPA claim was in response to LoanCare's motion to reconsider the previous denial of their motion to dismiss.[35] The district court rejected LoanCare's reliance on two unpublished decisions from the Northern District of West Virginia, *Rice v. Green Tree Servicing, LLC*,[36] and *Perrine v. Branch*

---

[32] JA0654 (citing SAC ¶¶ 25, 28–29).

[33] JA0657.

[34] JA0654.

[35] JA0843-0849.

[36] No. 3:14-cv-93, 2015 WL 5443708 (N.D. W. Va. Sept. 15, 2015).

*Banking & Trust Co.*,[37] holding: "Again, the Tedericks have plausibly alleged that the monthly statements are a 'false representation ... of the character, extent or amount of a claim against' them."[38] The Court also found that the Tedericks also plausibly alleged that LoanCare collected or attempted to collect "any interest or other charge, fee or expense incidental to the principal obligation. . . [that is not] expressly authorized by the agreement creating or modifying the obligation and by statute or regulation."[39] The district court concluded, "[i]f true, those are actionable violations of the WVCCPA's terms."[40]

Just shy of a year later, however, the district court granted summary judgment for LoanCare on the Tedericks' remaining WVCCPA claim, holding "[a]lthough Prepayments may have been applied incorrectly, LoanCare's conduct 'was not fraudulent, deceptive, or misleading, as required for this Court to find a violation of West Virginia law.'"[41] The district court characterized the Tedericks' case as "no more

---

[37] No. 2:17-cv-70, 2018 WL 11372226 (N.D. W. Va. Sept. 25, 2018).

[38] JA0848 (quoting W. Va. Code § 46A-2-127(d)).

[39] JA0849 (internal quotations and citations omitted).

[40] *Id.*

[41] JA2755.

than a billing dispute[,]" and said the WVCCPA "was designed to protect consumers against unscrupulous collection practices[,]" "not seek to penalize misrepresentations of the character, extent or amount of a debt unless it is fraudulent, deceptive, or misleading."[42]

The district court held that "finding that LoanCare misapplied Prepayments does not make Summary Judgment inappropriate."[43] The district court stated it was "important to clarify the central issue here[:]"

> To be sure, LoanCare may have misapplied the Tedericks' Prepayments resulting in LoanCare receiving unearned interest. But the question is not simply whether and to what extent LoanCare got this wrong. The proper inquiry is whether LoanCare *meant* to get it wrong. The proper inquiry is whether LoanCare engaged in an unfair, illegal, and deceptive practice or act."[44]

Thus, it concluded "[n]one of the factual disputes the Tedericks raise are triable issues that would ultimately affect the outcome of this case."[45]   In district court's view, "at most, LoanCare was merely wrong[,]  [a]nd . . . simply being wrong is not conduct for which the WVCCPA covers."[46]

---

[42] JA2752.

[43] JA2752-2753.

[44] JA2752-2753.

[45] JA2755-2756.

[46] JA2753.

Notably, the district court did not explain how the factual development in the case during discovery negated the Tedericks' allegations that the monthly statements are a false representation of the character, extent or amount of a claim against them or that LoanCare collected or attempted to collect as any interest or other charge, fee or expense incidental to the principal obligation that is not expressly authorized by the agreement creating or modifying the obligation—either of which it previously held if true were actionable violations of the WVCCPA's terms.

## SUMMARY OF ARGUMENT

At bottom, LoanCare overcharged the Tedericks. When they went to court to get their money back, their conversion and unjust enrichment claims were dismissed—twice. The district court, however, ultimately allowed their WVCCPA claims to proceed. Among other protections, and as relevant here, the WVCCPA prohibits debt collectors from using fraudulent, deceptive or misleading representations and from using otherwise unfair or unconscionable means to collect a debt.

The district court below interpreted the substantive provisions of the WVCCPA at issue in this case to require proof of intent holding that

"a false representation must involve bad faith, dishonesty, a lack of integrity, or moral turpitude."[47]  Prefaced with the disclaimer that it "need not conclude whether LoanCare properly applied the Tedericks' [p]repayments[,]"[48] the district court's interpretation of the WVCCPA is simply wrong.

To start, the court applied the wrong standard.  Between weighing the record evidence, making credibility determinations, and deciding the truth of the merits, the district court usurped it prescribed role.  Despite the Tedericks' argument "that the documents LoanCare produced "indicate LoanCare's longstanding knowledge and straight-up disregard of the impact of its conduct[,]" and the court's review of internal LoanCare communications in which an employee acknowledges that interest the account is not a 'Daily Simple Interest' account," summary judgment was entered for LoanCare.

That turns the Rule 56(a) analysis on its head.  The district court drew all reasonable inferences and viewed all facts in the movant's favor, not the other way around.  Even assuming the Tedericks had to prove

---

[47] JA2752-2753.

[48] *Id.*

14

intent—which they did not—the analysis is still wrong. Really, no jury could ever find a loan servicer that acknowledged a mistake, refused to correct it, continued to make it, and all the while is profiting from that mistake, did so intentionally? That is doubtful at best.

The court's erroneous application of the summary judgment standard only is possible thanks to its suspect interpretation of the unambiguous statutory provisions at issue. For if intent is not required, and simple mistakes are in fact within the WVCCPA's gambit, the facts recognized by the district court could never support summary judgment for LoanCare. "True, LoanCare admits error[,]" the court noted below. Even accepting the district court's view of the facts, under a proper interpretation of the WVCCPA, it is the Tedericks who have the better case for summary judgment.

But the district court did not get the West Virginia law right. It decided this case, in large part, by relying on non-binding, federal district court cases. Decisions from West Virginia courts post-dating those cases have cast doubt on their reasoning because a rigid application of the Act is incompatible with the prudent flexibility the Legisltature wrote into the statute.

This Court should recognize the intent of the West Virginia Legislature and vacate the decision below.

## STANDARD OF REVIEW

This Court "review[s] a grant of summary judgment de novo, applying the same legal standards as the district court."[49] Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[50] "A dispute is genuine if 'a reasonable jury could return a verdict for the nonmoving party[,]'"[51] and a "fact is material if it might affect the outcome of the suit under the governing law."[52] When considering summary judgment, "the district court must 'view the evidence in the light most favorable to the' nonmoving party."[53]

---

[49] *Reyes v. Waples Mobile Home Park Ltd. P'ship*, 91 F.4th 270, 276 (4th Cir. 2024).

[50] *Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 568 (4th Cir. 2015) (quoting Fed. R. Civ. P. 56(a)).

[51] *Id.* (quoting *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013)).

[52] *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

[53] *Id.* (citing *Tolan v. Cotton*, 572 U.S. 650, 655–656 (2014)).

The district court may not weigh evidence, make credibility determinations, or grant summary judgment "merely because the court believes that the movant will prevail if the action is tried on the merits."[54] Or, as the court below recently put it, "'the Court is not to weigh the evidence and determine the truth of the matter' at the summary judgment phase[.]"[55] Under this framing, it was improper for the district court to grant summary judgment in LoanCare's favor.[56]

## ARGUMENT

This Court should reverse the district court's order granting LoanCare Summary Judgment. The district court failed to give effect to the WVCCPA's remedial nature. It ignored the structure of the Act and its interpretation is inconsistent with the overarching design of the

---

[54] *Id.* at 568–569.

[55] *Williamson v. Sch. Bd.*, No. 2:23cv224, 2025 U.S. Dist. LEXIS 66140, at *7 (E.D. Va. March 17, 2025).

[56] *See e.g.*, *Studco Bldg. Sys. US, LLC v. 1st Advantage Fed. Credit Union*, 133 F.4th 264, 275 (4th Cir. 2025) (reversing a grant of summary judgment because the district court erred in its interpretation of the statutory requirements for liability); *cf Variety Stores, Inc. v. Wal-Mart Stores, Inc.*, 888 F.3d 651, 659 (4th Cir. 2018) ("A correct application of the Rules is especially important in a protracted civil action such as this one, in which subsequent proceedings are closely intertwined with the disposition of the summary judgment motion.").

WVCCPA. These errors led it to the erroneous conclusion that more than mere error is required.

## I.     The WVCCPA is a remedial statute to be interpreted liberally consistent with its overarching design.

Like the Supreme Court of Appeals of West Virginia, we begin our analysis with an overview of the structure of the relevant provisions of the WVCCPA.[57] When the overarching design of the WVCCPA is viewed as a whole, the district court's misapplication of the WVCCPA becomes strikingly clear.

In interpreting the WVCCPA, the Supreme Court of Appeals of West Virginia has long emphasized that the Act: "represents a comprehensive attempt on the part of the Legislature to *extend protection* to the consumers and persons who obtain credit in this State."[58] As such, "[t]he purpose of the [WVCCPA] is to protect consumers from unfair, illegal, *and* deceptive acts or practices *by providing an avenue of relief for*

---

[57] *See Dunlap v. Friedman's, Inc.*, 213 W. Va. 394, 399, 582 S.E.2d 841, 846 (2003) (court construing WVCCPA "must consider the overarching design of statute" (internal quotations and citations omitted)).

[58] *Harless v. First Nat'l Bank in Fairmont*, 162 W. Va. 116, 125, 246 S.E.2d 270, 275-76 (1978) (emphasis added); *Vanderbilt Mortg. & Fin., Inc. v. Cole*, 230 W. Va. 505, 511, 740 S.E.2d 562, 568 (2013); *State ex rel. 3M Co. v. Hoke*, 244 W. Va. 299, 309, 852 S.E.2d 799, 809 (2020).

*consumers who would otherwise have difficulty proving their case under a more traditional cause of action.*"[59]   Thus, when interpreting the WVCCPA, "[i]t must be [the] *primary objective* to give meaning and effect to this legislative purpose."[60]   That broad principle exists because the WVCCPA is "clearly remedial in nature" and therefore "must [be] construe[d] liberally so as to furnish and accomplish all the purposes intended."[61]

And, when liberally construing the WVCCPA, a construction of the Act's provisions that are not in "accord with the legislative intent" underpinning the WVCCPA are to be avoided.[62]   Although the district

---

[59] *State ex rel. McGraw v. Scott Runyan Pontiac-Buick*, 194 W. Va. 770, 777, 461 S.E.2d 516, 523 (1995) (emphasis added); *State ex rel. McGraw v. Telecheck Servs.*, 213 W. Va. 438, 448, 582 S.E.2d 885, 895 (2003); *Dunlap,* 213 W. Va. at 399, 582 S.E.2d at 846; *State ex rel. McGraw v. Scott Runyan Pontiac-Buick, Inc.*, 194 W. Va. 770, 777, 461 S.E.2d 516, 523 (1995); *Barr v. NCB Mgmt. Servs.*, 227 W. Va. 507, 513, 711 S.E.2d 577, 583 (2011); *see also Hoke,* 244 W. Va. at  309, 852 S.E.2d at 809 (WVCCPA is a "remedial statute [that] *improves or facilitates* remedies already existing for the enforcement or rights of redress of wrongs") (emphasis added; internal quotation omitted)).

[60] *Barr*, 227 W. Va. at 513, 711 S.E.2d at 583 (2011) (emphasis added); *Scott Runyan Pontiac-Buick*, 194 W. Va. at 777, 461 S.E.2d at 523.

[61] *Scott Runyan*, 194 W. Va. at 777, 461 S.E.2d at 523.

[62] *See Barr*, 227 W. Va. at 512-13, 711 S.E.2d at 582-83 ("[W]e do not believe that such a literal interpretation of the term is in accord with the legislative intent behind the WVCCPA.").

court referenced some of these rules of interpretation, requiring that plaintiffs prove fraud and intent—and cabining the broad substantive provisions of the WVCCPA based on extra-statutory concerns—is inconsistent with not only the rules of interpretation set forth by the Supreme Court of Appeals of West Virginia, but also the high court's interpretation of the WVCCPA.

II.   **The district court erred in imposing a requirement that a consumer alleging a violation of sections 46A-2-127 and 46A-2-128 prove that the defendant *intended* to improperly charge the consumer.**

The district court granted summary judgment after finding that the WVCCPA imposed burdens on the Plaintiffs that do not appear in either § 46A-2-127 or § 46A-2-128, holding that the "proper inquiry is whether LoanCare meant to get it wrong [or] engaged in an unfair, illegal, and deceptive act or practice."[63] The district court reached this conclusion based on its concern over the "imposition of "harsh civil penalties for simple mistakes."[64]   Respectfully, the district court's extra-textual

---

[63] JA2752-2753 (citing *Boczek v. Pentagon Fed. Credit Union*, 725 F. Supp. 3d 542, 546 (N.D. W. Va. 2024)).

[64] JA2751-2752 (quoting *Bourne v. Mapother & Mapother*, P.S.C., 998 F. Supp.2d 495, 505 (S.D. W. Va. 2014).

concerns are inappropriate, as they ignore the choices the Legislature explicitly made in this remedial act and the precedent of the Supreme Court of Appeals of West Virginia.

> **A. Adding a requirement that a consumer must prove intent either ignores or is inconsistent with numerous provisions of the WVCCPA.**

The West Virginia Legislature addressed the district court's concerns over the potential breadth of the substantive provisions of the WVCCPA. That is, the remedy provisions of the WVCCPA deliberately balance the private enforcement of violations with the protection of creditors whose culpability makes them undeserving of the strict enforcement of the Act.

For example, the WVCCPA allows the creditor or debt collector a complete defense to penalties "if, after discovering an error and prior to the institution of an action under this section or the receipt of written notice of the error, the creditor notifies the person concerned of the error and corrects the error."[65] This provision dovetails neatly with the requirement that a consumer send the putative WVCCPA defendant notice "of the alleged violation and the factual basis for the violation" —

---

[65] W. Va. Code § 46A-5-101(7).

which triggers the right to make a "cure offer" — before initiating the a lawsuit.[66]  The putative defendant's service of a cure offer presents a bar to a claim for attorney's fees if the ultimate award does not "excee[d] the value of the cure offer."[67]

Finally, to protect against the imposition of penalties for inadvertent mistakes, the WVCCPA contains a defense to any penalty when "the creditor or debt collector establishes by a preponderance of evidence that a violation is unintentional or the result of a bona fide error of fact notwithstanding the maintenance of procedures reasonably adapted to avoid any such violation or error."[68]  Thus, because the

_____

[66] W. Va. Code § 46A-5-108(a).

[67] *Id.* at § 46A-5-108(f).  After litigation has been initiated, either party has the right to serve "a written offer to settle a claim under [the WVCCPA] for the money specified in the offer and to enter into an agreement dismissing the claim or to allow judgment to be entered accordingly," W. Va. Code § 46A-5-109(a), which both limits attorney fees awarded to a consumer and permits a defendant to make a claim for attorney fees under the WVCCPA when the consumer's award is not at least 75% of the written offer.  *Id.* at § 109(b).

[68] W. Va. Code § 46A-5-101(8).  Below, the Tedericks' pointed out that Loan Care did not try to meet the statutory elements for the section 101(8) defense, but the district court refused to consider the argument because of its finding that the WVCCPA was not triggered.  JA2753.  The district court ignored Plaintiffs' argument that the existence of the defense was inconsistent with the requirement that the Plaintiffs' show intent.  *See* JA2743-2756.

22

WVCCPA's *remedy* provisions provide ample protection from "harsh civil penalties for simple mistakes" the district court's extra-textual concerns do not justify limitations to the *substantive provisions* of the act. Such limitations are thus not only unnecessary, but inappropriate given the text of the WVCCPA and the liberal construction to which it is entitled.

### B. The district court's decision improperly amends the WVCCPA to include substantive requirements that were not enacted by the Legislature.

Apart from ignoring the remedy provisions of the WVCCPA, by limiting liability under the act to when the defendant "meant to get it wrong," reads a requirement to prove intent into two substantive provisions of the WVCCPA where it does not exist (unlike the other provisions of the act which explicitly require a showing of intent). As the Supreme Court of Appeals has recently emphasized, however: "It is not for this Court arbitrarily to read into a statute that which it does not say. Just as courts are not to eliminate through judicial interpretation words that were purposely included, we are obliged not to add to statutes

something the Legislature purposely omitted."[69]  This rule is particularly appropriate in the case of a remedial statute like the WVCCPA.[70]

The two, substantive provisions of the WVCCPA simply do not have the requirements the district court amended into them.  Specifically, W. Va. Code § 46A-2-127 provides:

> No debt collector shall use any fraudulent, deceptive or misleading representation or means to collect or attempt to collect claims or to obtain information concerning consumers. Without limiting the general application of the foregoing, the following conduct is deemed to violate this section:
> . . .
>
> (d) Any false representation or implication of the character, extent or amount of a claim against a consumer…

---

[69] *Neidig v. Valley Health Sys.*, No. 24-27, ___ W.Va. ___, 2025 W. Va. LEXIS 224, at *21-21 (June 10, 2025) (quoting syl. pt. 11, *Brooke B. v. Ray C.*, 230 W. Va. 355, 738 S.E.2d 21 (2013); *see also Neidig, supra* at *21 ("Modifying a statute in this way to change its meaning [by adding words that are not there] exceeds this Court's authority."); *id.* at *36 (Walker, J., concurring) ("Most egregiously, Respondent's construction requires the insertion of a word that does not appear in the statute—something we cannot do.").

[70] *Blue Shield of Va. v. McCready*, 457 U.S. 465, 477, 102 S. Ct. 2540, 2547 (1982) ("Indeed, the unrestrictive language of the section, and the avowed breadth of the congressional purpose, cautions us not to cabin § 4 in ways that will defeat its broad remedial objective."); *Morgan v. Amex Assurance Co.*, 352 Or. 363, 373, 287 P.3d 1038, 1043 (2012) ("Adding the word 'only' to section 335, as defendant would, [improperly] limits the remedial scope of that provision."); *cf. Neidig*, 2025 W. Va. LEXIS 224, at *22 (the rule that courts may not add words to a statute is "particularly true" where the act is in derogation of the common law).

24

Similarly, W. Va. Code § 46A-2-128 states:

> No debt collector may use unfair or unconscionable means to collect or attempt to collect any claim. Without limiting the general application of the foregoing, the following conduct is deemed to violate this section:
>
> . . .
>
> (d) The collection of or the attempt to collect any interest or other charge, fee or expense incidental to the principal obligation unless such interest or incidental fee, charge or expense is expressly authorized by the agreement creating or modifying the obligation and by statute or regulation;
>
> . . .

In the case of these two provisions of the WVCCPA, we know from reviewing the act as a whole that the Legislature did not intend to require intent as an element of sections 46A-2-127 and 46A-2-128 because where the Legislature meant for intent to be a required element of a WVCCPA claim, it did so specifically.[71] The Legislature also made certain enhanced

---

[71] W. Va. Code § 46A-2-125(b), (d) (requiring "intent to annoy, abuse, oppress or threaten" in prohibitions on debt collectors telephoning consumers repeatedly or without disclosing identity); W. Va. Code § 46A-4-108 ("A regulated consumer lender may not use multiple loan agreements with intent to obtain a higher loan finance charge than would otherwise be permitted by the provisions of this article."); W. Va. Code § 46A-4-109(5)(c) (prohibiting "making any loan secured by any encumbrance on residential property with the intent that the loan will not be repaid and that the lender will obtain title to the property through foreclosure"); W. Va. Code § 46A-6-102(7)(I), (J), (M) (each requiring showing of intent to meet definition of "Unfair methods of competition

remedies were available for consumers victimized by "willful" violations of the WVCCPA.[72]   If liability is only imposed when the defendant "meant" to violate the WVCCPA, the foregoing provisions are reduced to superfluities.

It is clear that the Legislature explicitly specified intent or knowledge requirements when and where they thought necessary. Implying them elsewhere is improper.[73]   Similarly, decisions of the

---

and unfair or deceptive acts or practices"); W. Va. Code § 46A-6-110(a)(1) ("No person may . . . [s]olicit or accept a postdated check with the intent of presenting it for payment prior to the date listed on the check"); W. Va. Code § 46A-6G-2 ("No person may initiate the transmission of an unauthorized electronic mail message with the intent to deceive and defraud.").

[72] W. Va. Code § 6A-5-103(4) (providing for criminal penalties for willful violations of debt collection restrictions); W. Va. Code § 46A-5-105 (court may cancel unsecured debt if a creditor "has willfully violated the provisions of this chapter applying to illegal, fraudulent or unconscionable conduct or any prohibited debt collection practice)); W. Va. Code § 46A-6G-5(b) ("Punitive damages may be awarded for the willful failure to cease initiating unauthorized bulk electronic mail messages."); *see also* W. Va. Code § 46A-2-139 ("Punitive damages may be awarded for the willful failure to cease initiating unsolicited commercial facsimile transmissions."); W. Va. Code § 46A-7-111 (permitting penalties in action brought by Attorney General for "repeated and willful violations" of WVCCPA); W. Va. Code § 46A-2A-104 (same; data breach cases).

[73] *See Hinkle v. Safe-Guard Prods. Int'l, Ltd. Liab. Co.*, 839 F. App'x 770, 776 (4th Cir. 2020) ("The omission of any mention of insurance in [WVCCPA] Article 6 (while at the same time regulating insurance in

Supreme Court of Appeals make it clear the plaintiff need not establish

proof of intent to violate the WVCCPA:

> The language of West Virginia Code § 46A-5-101(8) is clear
> that the creditor — in this case, petitioner — must establish
> that the calls were unintentional, not the debtor — in this
> case, respondent. As such, any argument petitioner advances
> that is predicated on its assertion that respondent did not
> meet 'his burden of proof to establish that [petitioner]
> intended to violate' the WVCCPA or that the circuit court
> erred in 'not making any factual finding of the required
> element of intent necessary to support a violation' of the
> applicable statute is entirely without merit.[74]

Simply put, the district court amended the statute in manner that

is inconsistent with the WVCCPA as enacted by the Legislature.  Its

interpretation led to an erroneous grant of summary judgment and is

reversable error.

---

other contexts) suggests that the West Virginia legislature didn't intend
for it to apply to the sale of insurance."); *Mallory v. Mortg. Am., Inc.*, 67
F. Supp. 2d 601, 610 (S.D. W. Va. 1999) ("Applying the maxim *expressio
unius est exclusio alterius*, the court concludes that the legislature,
having mentioned disclosure violations with respect to consumer leases
but not consumer loans, did not intend to include consumer loan
disclosure violations within the ambit of § 46A-5-101(1).").

[74] *LTD Fin. Servs., L.P. v. Collins*, No. 18-0008, 2019 W. Va. LEXIS 85,
at *7 (Mar. 15, 2019); *see also* Syl. Pt. 3, *Horton v. Pro. Bureau of
Collections of Maryland, Inc.,* 238 W. Va. 310, 794 S.E.2d 395 (2016) ("A
claim brought under W. Va. Code § 46A-2-127(c) (1997) of the West
Virginia Consumer Credit and Protection Act is not sufficiently
analogous to a claim for deceit and fraud.").

**C. The district court relied on non-binding authorities that do not support summary judgment.**

In imposing a requirement that a WVCCPA plaintiff prove intent in order to succeed on a claim under sections 46A-2-127 and 46A-2-128, the district court relied on four non-binding federal district court opinions: *Boczek, Bourne*, *Rice*, and *Perrine*. None of these decisions support the district court's conclusions.

The district court relied on *Boczek* for the proposition that the WVCCPA requires a showing that "LoanCare engaged in an unfair, illegal, and deceptive act or practice."[75] *Boczek,* however, on facts similar to the claims here, found violations of both §§ 127 and 128 of the WVCCPA.

*Boczek* involved a challenge to a $5.00 "pay-to-pay" fee for making monthly auto loan payments over the telephone.[76] With respect to the plaintiff's §128(d) claim, the court rejected the defendant's attempt to impose an obligation to show that the charge was unconscionable and

---

[75] JA2752-2753 (citing *Boczek,* 725 F. Supp. 3d at 546).

[76] 725 F. Supp. 3d at 545.

refused to impose a requirement that plaintiff establish any facts beyond the charge being one that was not authorized by the agreement:

> Plaintiff contends that subsections (a) through (f) provide examples of conduct which is 'unfair or unconscionable' under the WVCCPA. *Id.* at p. 10. The Court agrees. Section 46A-2-128 clearly states that 'the following conduct is deemed to violate this section,' before listing examples of unfair or unconscionable conduct. §46A-2-128. Plaintiff is not required to plead unconscionability to support these claims, beyond providing facts which evidence PenFed engaged in some conduct prohibited under subsections (a) through (f).[77]

The *Boczek* Court had no trouble finding that an unauthorized charge constituted a per se violation of § 128(d).[78] Similarly, *Boczek* rejected the argument that it was necessary to show anything more than the charge was unauthorized under the note to show a violation of section 127(d)'s prohibition on fraudulent or deceptive representations.[79] Thus, as *Bocezk* and the express provisions of the WVCCPA make clear, a violation of the specific prohibitions in § 127(d) or § 128(d) constitute violations of the act

---

[77] *Id.* at 548.

[78] *Id.* at 548-49 ("Plaintiff alleges PenFed violated § 46A-2-128(d) '[b]y charging or collecting Pay-to-Pay Fees not authorized by the Promissory Note.' [S]uch conduct would qualify as collecting fees that are not expressly authorized by the agreement.").

[79] *Id.* at 551 (finding $5.00 fee for making payments on auto loan not authorized under promissory note sufficient for violation of § 46A-2-127(d)).

without the need to show any other evidence that the conduct constituted

unfair or unconscionable practices or amounted to fraudulent, deceptive,

or misleading statements.[80]

The district court relied on *Bourne* for its conclusion that the

"legislative purpose of the WVCCPA is not to impose harsh civil penalties

for simple mistakes"[81]  In *Bourne,* the plaintiff alleged that the defendant

collector made numerous telephone calls to the plaintiff's residence after

being notified that the plaintiff was represented by counsel.[82]    The

defendants in *Bourne,* however, produced evidence that they were not

trying to contact the plaintiff; rather, they were attempting to contact

plaintiff's aunt to collect a separate debt and had been given plaintiff's

---

[80] *Bourne, supra.*  Numerous other more recent and/or more reasoned decisions support this plain application of the clear language of sections 127 and 128.  *See, infra,* Part II(B), at p. 32-34 (discussing decisions holding that violations of subsections 127(d) and 128(d) are sufficient).

[81]    JA2751-2742 (quoting *Bourne,* 998 F. Supp. 2d at 505); *see also* JA2753 ("The evidence reveals that, at most, LoanCare was merely wrong. And as discussed above, simply being wrong is not conduct for which the WVCCPA covers." (citing *Bourne, supra*)); *see also* JA2752 ("If the Court were to hold that a genuine issue of material fact existed, the Court would be greenlighting civil penalties for a simple mistake—this would contravene the purpose of the WVCCPA." (citing *Bourne, supra*)).

[82] 998 F. Supp. 2d at 499.

telephone number as the number for his aunt.[83]  It was in this context

that the *Bourne* court made the statements relied upon by the district

court here.

    *Bourne,* however, is easily distinguishable because, unlike here, the

substantive claims at issue in *Bourne* — sections 125(d) and 128(e) — are

ones that explicitly require a showing of intent.[84]  The *Bourne* Court

granted summary judgment finding that the required showing of intent

was absent because the defendants were mistakenly calling plaintiff

when intending to reach his aunt.[85]  Even if it makes sense to exclude

---

[83] *Id.*

[84] *See* W. Va. Code. § 46A-2-125(d) (prohibiting debt collector from
"[c]ausing a telephone to ring or engaging any person in telephone
conversation repeatedly or continuously, or at unusual times or at times
known to be inconvenient, *with intent to annoy, abuse, oppress or threaten*
any person at the called number." (emphasis added)); W. Va. Code § 46A-
2-128(e) (forbidding debt collector from "[a]ny communication with a
consumer *whenever it appears* that the consumer is represented by an
attorney and the attorney's name and address are known, or could be
easily ascertained . . . ." (emphasis added)).

[85] 998 F. Supp. 2d at 502 ("[P]laintiff has failed to establish that Mapother
intended to annoy, abuse, oppress or threaten plaintiff or anyone else. As
such, defendants are entitled to summary judgment on plaintiff's § 46A-
2-125(d) claim."); *id.* at 504 ("However it came about, the unfortunate
mix-up in telephone numbers made it appear to defendants that they
were contacting Maxine Bourne. As such, the minimal *knowledge
required* to violate § 46A-2-128(e) cannot be imputed to defendants."
(emphasis added)).

"simple mistakes" from substantive claims that require a showing of knowledge or intent like in *Bourne*, it does not make sense to conjure an intent or knowledge requirement to § 127(d) and § 128(d), where there is no mention of a required showing of intent or knowledge.[86]

Finally, the district found a pair of unpublished district court decisions, *Rice* and *Perrine,* instructive.[87]  *Rice* involved a claim that the servicer improperly continued to charge the consumer for private mortgage insurance ("PMI") after the automatic termination date for those payments had passed.[88]  The *Rice* court found that the mistaken failure to cease the collection of PMI did not constitute a violation of section 127(d)'s bar on "[a]ny false representation or implication of the character, extent or amount of a claim against a consumer, or of its status in any legal proceeding" because the alleged misrepresentations were in monthly billing statements sent to the plaintiff in an effort to comply with federal and state law.[89]

---

[86] *See, supra,* Parts I, II(A).

[87] JA2753-2754.

[88] 2015 U.S. Dist. LEXIS 122566, at *2.

[89] *Id.* at *42.

*Perrine* involved the failure to credit a portion of the plaintiffs' payments to a loss of life payment protection plan. In doing so, the creditor made multiple false representations or implications of the character, extent, or amount of a claim against the Plaintiffs in violation of § 127(d) and § 128(d).[90] The district court rejected both of the plaintiffs' claims.[91] The two non-binding, unpublished opinions in *Rice* and *Perrine*—to the extent they concluded a creditor cannot be liable under the WVCCPA for errors found in account statements—are simply wrong.

First, neither decision addresses the existence of the bona fide error defense in the WVCCPA. Because the Legislature choose to deal with mistakes and errors as a defense—as opposed to making them an element of a consumer's claim—it is improper to imply additional requirements into the broad remedial provisions of the WVCCPA.[92] Similarly, the decisions improperly require some showing of intent or knowledge when

---

[90] 2018 U.S. Dist. LEXIS 244981, at *13, *14.

[91] *Id.* at *14 (rejecting section 128(d) claim because "This conduct simply does not rise to the level of unscrupulous collection practices for which the WVCCPA was enacted."); *id.* at *16 ("Although the statements may have been incorrect, defendant's conduct in sending billing statements was not fraudulent, deceptive, or misleading, as required for this Court to find a violation of West Virginia law." (citing *Rice*)).

[92] *See, supra,* Part I.

33

the Legislature has omitted the requirement from the substantive claims at issue.[93]

Second, the decisions are outliers. The recent trend of decisions is to reject the conclusory holding in those two cases. Just last year in *Price v. Higher Educ. Loan Auth. of Mohela*, a West Virginia trial court denied summary judgment, persuasively rejecting the holdings of *Rice* and *Perrine*.[94] As *Price* noted, *Rice* and *Perrine* ignore the Legislature's use of "any" in §§ 127 and 128: "In *Thomas v. Firestone*, the WVSCA addressed the meaning of the word "any" in the context of the WVCCPA and ruled, unsurprisingly, that the word "any" means "any."[95]

*Rice* and *Perrine* concluded that there should not be liability for misrepresentations contained in account statements, but "[n]either *Rice* nor *Perrine* even considered the 2015 amendments to the WVCCPA, which took effect after the summary judgment motions were filed in *Rice*, that exempted '[r]egular account statements' from constituting

---

[93] *See, supra,* Part II(A).

[94] No. CC-40-2022-C-179 (W. Va. Cir. Ct. Putnam Cnty. 2024) (attached in the addendum, pursuant to Local Rule 28(b)).

[95] *Id.* at 17 (citing *Thomas v. Firestone Tire & Rubber Co.*, 266 S.E.2d 905, 909 (W. Va. 1980).

prohibited communications under section 128 but providing no such exemption for section 127 [or section 128(d)]."[96] Simply put, "[w]hen the Legislature intends to exclude regular account statements from the scope of the WVCCPA, it does so expressly."[97]

Similarly, in *Chapman v. TD Bank N.A.*, the District Court for the Southern District of West Virginia, following *Price* and its reasoning, rejected the holdings of *Rice* and *Perrine*.[98] With respect to the 2015 amendments, the *Chapman* court further noted: "The legislature has amended the WVCCPA multiple times since [2015]. However, the legislature did not amend § 46A-2-127 [or § 46A-2-128(d)] to include a similar exception [for account statements]."[99] As the court in *Price* noted, *Rice* and *Perrine* are inconsistent with "other more reasonable approaches" which hold "regular monthly statements, even those required to be sent under federal law, may fall within the scope of the

---

[96] *Id.*

[97] *Id.*

[98] No. 3:24-0536, 2025 U.S. Dist. LEXIS 84185, at *12-13 (S.D. W. Va. May 2, 2025) ("The language of the WVCCPA, the case law, and the actions of the West Virginia legislature all suggest that periodic statements that include information required by TILA may constitute efforts to collect debt.").

[99] *Id.* at *12.

WVCCPA."[100]    Finally, these recent decisions reject the notion that subjective intent is necessary for these types of claims: "the question under § 46A-2-127 is not a subjective one.   Rather, the statute lists conduct that 'is deemed to violate this section' and includes in that list '[a]ny false representation or implication of the character, extent or amount of a claim.'"[101]

Finally, although the district court here found its prior decisions rejecting a Rule 12(b)(6) dismissal based on *Price* and *Perrine* inapplicable to a summary judgment motion,[102] both *Price* and *Chapman* continued to find the district court's initial rulings here persuasive at summary judgment.[103]   The district court's initial conclusions at the motion to dismiss stage should have resolved the issue:

> [T]he Court declines to fashion a new rule that forecloses
> parties from stating a claim under the WVCCPA based on

---

[100] *Price*, *supra* at p. 18; *see also id.* ("This Court finds that plaintiffs may still have a claim under § 46A-2-127. . . . because if defendant sent plaintiffs statements including charges for "unauthorized and illegal fees" the statement could be found to be a "representation" by defendant that the illegal fees were due and owing." (quoting *Manning v. Wells Fargo Bank, N.A.,* 2009 WL 10709758, at *6 (N.D. W. Va. Sept. 24, 2009)).

[101] *McNeely vs. Wells Fargo Bank*, *NA*, 115 F.Supp.3rd 779, 787 (S.D. W. Va. 2015) (quoted in *Price, supra*, at p. 16).

[102] JA2751.

[103] *Price, supra,* at p. 15-16; *Chapman, supra,* at p 11.

allegedly false billing statements. In this case, the Tedericks have pled facts plausibly alleging that the monthly statements are a "false representation ... of the character, extent or amount of a claim against" them. W. Va. Code § 46A-2-127(d). The Second Amended Complaint sufficiently identifies the allegedly fraudulent billing statements, the dates on which LoanCare sent those statements, and how LoanCare allegedly misapplied their combined payments.[104]

For the reasons noted by *Price* and *Chapman, Rice* and *Perrine* do not accurately interpret the WVCCPA and the district court's reliance on them was reversable error.

### D. Even if intent is a requirement (it is not), the Tedericks have shown sufficient evidence to establish intent when viewed in a light most favorable to them.

Finally, even assuming that Plaintiffs are required to prove intent, the record contains ample evidence that LoanCare intended to credit Plaintiffs' payments in the manner it did. LoanCare does not contend that it mistakenly miscredited Plaintiffs' payments. Rather, as the district court recognized, it did so based on its view of the Fannie Mae Guidelines.[105]    Here, as noted above, the Plaintiffs repeatedly called

---

[104] JA0654 (quoted in *Price*, *supra*, p.16).

[105] *See* JA2754 ("the Court concludes that LoanCare's conduct did not amount to a false representation. LoanCare's Prepayment applications

37

LoanCare's misapplication of payments to its attention, but LoanCare continued to misapply Plaintiffs' payments. Absent express language in the statute, a mistake regarding the legal requirements does not excuse a violation of the WVCCPA by a debt collector.[106]

### E. The district court's non-findings regarding whether LoanCare is a "debt collector" and whether it correctly applied Plaintiffs' payments cannot support summary judgment.

The district court made two non-findings in dicta. It expressed doubt over whether LoanCare was a "debt collector" under the WVCCPA.[107] It also claimed that LoanCare's payment application was directed by Fannie Mae servicing guidelines.[108] Neither of these "conclusions" support summary judgment.

With respect to the question of whether LoanCare was a debt collector, the issue was not raised by LoanCare, nor briefed by the

---

were made in an effort to comply with Fannie Mae Servicing Guidelines.").

[106] *See Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich, L.P.A.*, 559 U.S. 573, 604-05, 130 S. Ct. 1605, 1624 (2010) ("We therefore hold that the bona fide error defense in § 1692k(c) does not apply to a violation of the FDCPA resulting from a debt collector's incorrect interpretation of the requirements of that statute.").

[107] JA2755.

[108] JA2754-2755.

Plaintiffs.[109]  As such, the district court's musings in this regard cannot

serve as a basis for summary judgment because Plaintiffs had no notice

or opportunity to respond.[110]  The district court did not cite any authority

holding that a loan servicer collecting excess interest is not a debt

collector.  The authority it did cite only raised but did not decide the

question.[111]  Courts actually addressing the issue have held otherwise:

> The question raised by Defendant is whether the alleged
> misapplication of those payments, as alleged by Mr. Price,
> could ever constitute a violation of the WVCCPA; and,
> specifically, §46A-2-127.  To answer that question, we look to
> the definition of "debt collection" at W. Va. Code §46A-2-122:
> "any action, conduct or practice of soliciting claims for
> collection or in the collection of claims owed or due or alleged
> to be owed or due by a consumer." (emphasis added).
> Misapplication of payments certainly seems to this Court to
> be firmly within the scope of "any action, conduct, or practice
> . . . in the collection of claims owed." Solicitation is not

---

[109] *See* JA0850-0885 (LoanCare Summary Judgment Memo); JA2008-2034 (Plaintiffs' Memo in Opposition to Summary Judgment).

[110] Fed. R. Civ. Pro. 56(f)(2) (district court cannot grant summary judgment without "giving notice and a reasonable opportunity to respond"); *Moore v. Equitrans, Ltd. P'ship*, 27 F.4th 211, 225 (4th Cir. 2022) ("As neither party had notice or an opportunity to respond to this alternative theory, the district court's ruling on waiver grounds was error"); *see also id.* at n. 9 (citing cases and 10A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2720.1 (4th ed. 2016 & Supp. 2021)).

[111] JA0641 (citing *Delebreau v. Bayview Loan Servicing, LLC*, 770 F. Supp. 2d 813, 819, n.4 (S.D. W. Va. 2011), *aff'd on other grounds*, 680 F.3d 412 (4th Cir. 2012) and *Rice*, 2015 WL 5443708 at 12).

necessary, but it is also within the scope of debt collection. Furthermore, as the definition of "debt collector" in §122(d) makes clear, actionable conduct includes debt collection by both direct and indirect means.  This conclusion is further supported by the myriad of binding cases requiring that we interpret the WVCCPA broadly to provide an avenue of relief to consumers who may not have a more traditional cause of action.  Moreover, the misconduct here does not end with the misapplication of payments but continues with the subsequent collection of excess interest resulting from the misapplication.[112]

With respect to LoanCare's supposed reliance on the Fannie Mae servicing guidelines, the Tedericks are not parties to those guidelines and are not bound by them: "Fannie Mae's servicing guide is a set of instructions from a lender-principal to a servicer-agent; it is not a contract between borrower and lender."[113]  As set forth above, the Note that controlled the parties obligations did not permit LoanCare to refuse

---

[112] *Price, supra* at pp. 8-9 (footnote omitted); *Edge v. Roundpoint Mortg. Servicing Corp.*, No. 1:21-CV-122, 2024 U.S. Dist. LEXIS 176226, at *12 (N.D. W. Va. Sep. 27, 2024) ("Defendant RoundPoint is a 'Debt Collector' under the WVCCPA"); *cf. Alexander v. Carrington Mortg. Servs., LLC*, 23 F.4th 370, 375 (4th Cir. 2022) ("We hold that [as a loan servicer] Carrington is a 'collector' who charged an 'amount' that was not 'expressly authorized by the agreement creating the debt or permitted by law" in violation of the FDCPA.').

[113] *Pennell v. Wells Fargo Bank N.A.*, No. 1:10-CV-00582-HSO, 2012 U.S. Dist. LEXIS 96426, 2012 WL 2873882, at *8 (S.D. Miss. July 12, 2012), *aff'd*, 507 Fed. App'x 335 (5th Cir. 2013) (citations omitted).

to credit the Plaintiffs' extra payments to principal.[114]  The district court did not resolve the question of whether LoanCare's payment application complied with the Plaintiffs' Note; rather the district court assumed that it did not—implicitly finding that the question involved disputed facts.[115] As such, this Court should likewise assume—under the applicable summary judgment standard—that LoanCare's application of Plaintiffs' payments was improper.

## CONCLUSION

For the reasons stated in this brief, this Court should find that the district court erred in granting LoanCare's motion for summary judgment, vacate the final judgment, and remand this case for further proceedings.

---

[114] Plaintiffs sought summary judgment on this issue, but the motion was not fully briefed at the time of the district court's ruling on LoanCare's motion.  *See* JA2537.

[115]  JA2751 ("Assume LoanCare did misapply the Tedericks' Prepayments. The Court must still consider whether LoanCare's conduct falls under the WVCCPA's purview."); JA2752 ("Merely finding that LoanCare misapplied Prepayments does not make Summary Judgment inappropriate.").  Previously, the district court had held: "The Tedericks' right to submit Prepayments 'at any time' also does not answer the question of when, or in what order, LoanCare should apply a Prepayment and a monthly payment.  Therefore, the Note and Deed of Trust are ambiguous in this regard…". JA0644.

## STATEMENT REGARDING ORAL ARGUMENT

Appellants request oral argument.  As set forth in this brief, the state and federal trial courts have reached contrary conclusions regarding the legal issues raised in this appeal.  Appellants believe that oral argument will assist the Court in resolving those issues.

Dated:  June 26, 2025        Gary Tederick and Lisa Tederick
Appelants,
*By counsel*

s/Anthony J. Majestro
Anthony J. Majestro (WVSB 5165)
Graham B. Platz (WVSB 14093)
POWELL & MAJESTRO PLLC
405 Capitol Street, Suite 807
Charleston, WV 25301
(304) 346-2889
amajestro@powellmajestro.com
gplatz@powellmajestro.com

Stephen G. Skinner (WVSB 6725)
SKINNER LAW FIRM
115 E. Washington Street
Charles Town, WV 25414
(304) 725-7029
sskinner@skinnerfirm.com

42

## CERTIFICATE OF COMPLIANCE
## WITH TYPEFACE AND WORD-COUNT LIMITATIONS

I, Anthony J. Majestro, counsel for appellee and a member of the Bar of this Court, certify, pursuant to Federal Rule of Appellate Procedure 32(a)(7)(B), that the attached Opening Brief of Appellants is proportionately spaced, has a typeface of 14 points or more, and contains 8,670 words.

s/Anthony J. Majestro____
Anthony J. Majestro (WVSB 5165)


June 26, 2025

## CERTIFICATE OF SERVICE

I, Anthony J. Majestro, counsel for Appellant and a member of the Bar of this Court, certify that, on June 26, 2025, a copy of the attached Opening Brief of Appellants was filed with the Clerk and served on the parties through the Court's electronic filing system. I further certify that all parties required to be served have been served.

s/Anthony J. Majestro
Anthony J. Majestro (WVSB 5165)

June 26, 2025

# **ADDENDUM**



West Virginia E-Filing Notice

CC-40-2022-C-179

Judge: Joseph Reeder

**To:** Steven R. Broadwater, Jr.
Steve@BroadwaterLawGroup.com

---

# **NOTICE OF FILING**

---

IN THE CIRCUIT COURT OF PUTNAM COUNTY, WEST VIRGINIA

Bryan Price v. Higher Education Loan Authority of the State of Missouri

CC-40-2022-C-179

The following order - case was FILED on 5/20/2024 1:40:41 PM

Notice Date:     5/20/2024 1:40:41 PM

Stephanie M. Smith

CLERK OF THE CIRCUIT COURT

Putnam County

12093 Winfield Road

WINFIELD, WV 25213

(304) 586-0203

Stephanie.Smith@courtswv.gov

/s/ Joseph K. Reeder
Circuit Court Judge
Ref. Code: 24E9ITEYX

E-FILED | 5/20/2024 1:40 PM
CC-40-2022-C-179
Putnam County Circuit Clerk
Stephanie M. Smith

## IN THE CIRCUIT COURT OF PUTNAM COUNTY, WEST VIRGINIA

BRYAN PRICE,

      Plaintiff,

v.                                    Civil Action No. CC-40-2022-C-179
                                      *Judge Joseph Reeder*

HIGHER EDUCATION LOAN
AUTHORITY OF THE STATE OF
MISSOURI, d/b/a "MOHELA."

      Defendant.

## ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

On May 2, 2024, the Plaintiff appeared in person and through counsel Steven R. Broadwater, Jr., and the Defendant appeared through Counsel Jonathan L. Anderson for a pretrial hearing and a hearing on competing Motions for Summary Judgment. Defendant's Motion sought dismissal of Plaintiff's claims arguing that misapplication of loan payments is outside the scope of the West Virginia Consumer Credit and Protection Act ("WVCCPA" or "the Act"), W.Va. Code §46A-2-101 *et seq*., and arguing that regular monthly statements are likewise outside the scope of the WVCCPA regardless of any fraud or misrepresentation contained therein. Plaintiff moved for partial summary judgment seeking a finding of liability under W.Va. Code §46A-2-127 for sixteen (16) account statements that Plaintiff alleges contain false or misleading information. After careful consideration of the written memoranda, arguments of counsel, and the pertinent authorities, the Court hereby **DENIES** both Motions for the reasons more fully stated herein.

## I.    BACKGROUND

Plaintiff brings this action alleging that Defendant MOHELA, a student loan servicer for the U.S. Department of Education, has engaged in illegal debt collection. Defendant took over servicing for Mr. Price's loan in 2011 and continues to service his loan to this day. The crux of

Mr. Price's allegations are that Defendant failed to properly credit Mr. Price for payments made in 2011 and 2012. Mr. Price alleges that he had his account on autopay and that he never missed a payment. However, the records produced by Defendant in this case appear to show that no payment was received in November and December 2011, and that the payments received in January and February 2012 were applied entirely to interest with none applied to principal. Mr. Price has been unable to obtain his own bank records from this period.

Mr. Price alleges that he made the payments in November and December 2011, and that because he made the payments, those and the January and February payments should have been applied to his account according to the amortization schedule, with a portion being credited to principal and the rest being credited to interest. Because the loan at issue requires that the interest payment is calculated daily based on the principal balance, the Defendant's alleged failure to properly credit his payments from November 2011 through February 2012 (the payments at issue) caused his principal balance to be higher than it would have been had those payments been properly credited; and, thus, Defendant has been over-charging interest on Mr. Price's account since November 2011. Mr. Price alleges the continued collection of the inflated interest amount violates the WVCCPA (Count I), and constitutes a Breach of Contract (Count II).

### A.  DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Defendant's Motion for Summary Judgment argues that Mr. Price's allegations could never constitute violations of the WVCCPA as a matter of law and that because there was never any privity between Mr. Price and MOHELA, his breach of contract claims fail as well.

First, Defendant claims that misapplication of payments is not debt collection activity. Defendant acknowledges that the WVCCPA applies to debt collection and attempts to collect, but then claims that the application of payments does not qualify as the type of debt collection that the WVCCPA is intended to regulate. Defendant cites *Parola v. Citibank (South Dakota) N.A.*, 894 F.

Supp. 2d 188 (D. Conn. 2012) in support of its argument, claiming that the fundamental holding of *Parola* is that alleged improprieties with the administration of the consumer's account, including the application of payments made, is outside the realm of debt collection and therefore outside the purview of state consumer protection statues. In Response, Plaintiff highlights that there is plenty of precedent finding that the WVCCPA is a remedial statue that must be construed broadly in order to provide consumers with a cause of action when they otherwise may not have one. Plaintiff also points out that *Parola* is not binding on this court and that it is easily distinguishable because the consumer in *Parola* made no allegations that the debt collector actually attempted to collect.

Next, Defendant argues that it did not misapply the Plaintiff's payments because federal Regulations require that payments be applied "first to any accrued charges and collection costs, then to any outstanding interest, and then to outstanding principal." Defendant's Memorandum in Support of its Motion for Summary Judgment at 5 (citing 34 C.F.R. §685.221(c). Thus, because Mr. Price failed to make his required payments in November and December 2011, Defendant was required under federal law to apply all of the January and February 2012 payments to the accrued interest. In response, Mr. Price argues that he made his regular monthly payments in November and December 2011. So, according to the Plaintiff, how the payments should have been applied if prior payments were missed is irrelevant here where he claims that all payments were timely made. Further, plaintiff claims that if he had actually missed a payment, then late fees and penalty interest would have been applied to the loan and there is no indication in the records produced by Defendant that any late fees or penalty interest was ever applied to his account.

Third, Defendant argues that any claim by Mr. Price that his regular monthly statements violate the WVCCPA because they inaccurately reflect the amount due are expressly preempted

by the Higher Education Act ("HEA"), 20 U.S.C. §1001 *et seq*. Here, Defendant makes two alternative arguments in support of its ultimate argument that regular monthly statements are outside the scope of the WVCCPA. First, Defendant argues that because it is required to provide certain information to Mr. Price under federal Law, any claim state law claim Mr. Price has that the required information is inaccurate is expressly preempted by the HEA. Alternatively, Defendant argues that even if Mr. Price's WVCCPA claims are not expressly preempted, the regular account statements are not "debt collection activity" and therefore fall outside the scope of the WVCCPA.

In Response, Mr. Price highlights that these arguments were already made and rejected by this Court in its Order denying Defendant's Motion to Dismiss (entered May 2, 2024). Therein, the court found that "the claims alleged in Count I of Plaintiffs Complaint are not subject to preemption because they do not conflict with or otherwise hinder the Defendant's duties under federal law." Additionally, the Court previously addressed this issue finding that Plaintiff's claims "are more accurately characterized as misrepresentation claims rather than a failure to comply with state-specific disclosures." *Id*. Mr. Price also points out that of the three different types of preemption, implied, conflict, and express, express preemption is the easiest to establish because it requires a showing of express language in a federal statute indicating Congress's intent to preempt the entire field of state laws on any particular subject, and Defendant has not cited any such language. As to Defendant's alternative argument, Mr. Price contends that the plain language of the WVCCPA makes it clear that account statements qualify as a "representation" or "means" to collect or attempt to collect claims. W.Va. Code §46A-2-127. This language, in conjuncture with a myriad of cases reiterating that the WVCCPA is a remedial statute that must be construed

broadly to effectuate its remedial purpose, indicate that regular account statements are within the scope of the Act.

Defendant's fourth and final argument in support of its Motion for Summary Judgment is that because there was no contract between the Defendant and Mr. Price, Count II for Breach of Contract must fail as a matter of law. In Response, Plaintiff states that the contract governing Defendant's obligation to collect Mr. Price's debt, a contractual obligation that Defendant admits in its Answer, was requested in discovery and that Defendant refused to produce the contract. Mr. Price contends that dismissal is improper where Defendant admits it has a contractual duty to collect debt from Mr. Price but refuses to produce the contract, and affirmatively objects to providing the same. Alternatively, Mr. Price argues that Rule 15 of the WVRCP requires amendment to allow the pleadings to conform to the evidence presented. So, according to Plaintiff, if the facts alleged establish any other claim, such as fraud, tortious interference, or negligence, then the Court should allow amendment to remove any procedural hurdle to recovery.

## B.    PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Plaintiff's Motion for Partial Summary Judgement asks the Court to find Defendant liable for sixteen (16) violations of W.Va. Code §46A-2-127 which strictly prohibits debt collectors (as that term is defined in W.Va. Code §46A-2-122) from using "any fraudulent, deceptive or misleading representation or means to collect or attempt to collect claims or to obtain information concerning consumers."

Mr. Price provides the Court with sixteen (16) account statements which show the amount to be withdrawn from his account via auto debit and which also show how the previous payment was applied to his outstanding accounts. But for the misapplication of the subject payments from November 2011 through February 2012, Plaintiff contends that the payment would be lower than that demanded in the monthly statements because the statement seeks an amount of interest greater

than what should have been demanded but for the misapplication. In response, Defendant cites its Motion for Summary judgment and maintains that a factual issue remains as to whether the November and December 2011 payments were actually made.

## II.   STANDARD OF REVIEW

Summary judgment is proper and "**shall** be rendered forthwith" whenever "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," reveal "that there is **no** genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law." WVRCP Rule 56(c) (emphasis added); *Hanover Res., LLC* v. *LML Props., LLC,* 241 W. Va. 767, 771, 828 S.E.2d 829, 833 (2019). A "genuine" issue or dispute is simply one "about which reasonable minds could differ." *Dent v. Fruth,* 192 W. Va. 506, 510, 453 S.E.2d 340, 344 (1994). A "material" fact "is one that has the capacity to sway the outcome of the litigation under the applicable law." Syl. pt. 5, in part, *Jividen v. Law,* 194 W. Va. 705, 461 S.E.2d 451 (1995).

## III.   DISCUSSION

The Court will first address the Defendant's Motion as it could be dispositive on the entire action. The Court notes that Defendant has, in large part, repeated nearly identical arguments to those previously rejected by the Court in denying Defendant's Motion for Summary Judgment.[1] Nonetheless, the Court is constrained to Deny Defendant's Motion for Summary Judgment at this stage as well for the reasons set forth herein.

At the outset, the Court believes that it may be helpful to review the specific sections of the WVCCPA addressed herein and the case law that interprets it. The WVCCPA has consistently

---

[1] The Court denied Defendant's Motion to Dismiss at the conclusion of a hearing on that Motion held on August 9, 2023, and a proposed order was subsequently submitted. A signed copy of that Order was entered by the Court on May 2, 2024.

been upheld by the Supreme Court of Appeals of West Virginia as a remedial statute that must be broadly construed to accomplish its remedial purpose. As recently as 2020, the Court held the following:

> "The purpose of the CCPA is to protect consumers from unfair, illegal, and deceptive acts or practices by providing an avenue of relief for consumers who would otherwise have difficulty proving their case under a more traditional cause of action." *State ex rel. McGraw v. Scott Runyan Pontiac-Buick, Inc.*, 194 W. Va. 770, 777, 461 S.E.2d 516, 523 (1995). Hence, we have recognized that the CCPA is a "remedial" statute. *Id.* "A remedial statute improves or facilitates remedies already existing for the enforcement or rights of redress of wrongs[.]" *Martinez v. Asplundh Tree Expert Co.*, 239 W. Va. 612, 618, 803 S.E.2d 582, 588 (2017). "Statutes which are remedial in their very nature should be liberally construed to effectuate their purpose." Syl. pt. 6, *Vest v. Cobb*, 138 W. Va. 660, 661, 76 S.E.2d 885, 887 (1953). *Accord*, *State ex rel. McGraw v. Scott Runyan Pontiac-Buick, Inc.*, 194 W. Va. at 777, 461 S.E.2d at 523 ("Where an act is clearly remedial in nature, we must construe the statute liberally so as to furnish and accomplish all the purposes intended.").

*State ex rel. 3M Co. v. Hoke*, 244 W. Va. 299, 309, 852 S.E.2d 799, 809 (2020). Specifically at issue in this case is W.Va. Code §46A-2-127 which reads in relevant part:

> No debt collector shall use any fraudulent, deceptive or misleading representation or means to collect or attempt to collect claims or to obtain information concerning consumers. Without limiting the general application of the foregoing, the following conduct is deemed to violate this section: …
>
> (d) Any false representation or implication of the character, extent or amount of a claim against a consumer, or of its status in any legal proceeding; …

Definitions of specific terms are found in W.Va. Code §46A-2-122:

> (b) "Claim" means any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance or service which is the subject of the transaction is primarily for personal, family or household purposes, whether or not such obligation has been reduced to judgment.
>
> (c) "Debt collection" means any action, conduct or practice of soliciting claims for collection or in the collection of claims owed or due or alleged to be owed or due by a consumer.
>
> (d) "Debt collector" means any person or organization engaging directly or indirectly in debt collection.

With this language in mind, the Court will now address the specific arguments.

### A.    MISAPPLICATION OF PAYMENTS MAY CONSTITUTE DEBT COLLECTION

In arguing that any alleged misapplication of payments is outside the scope of the WVCCPA, specifically W.Va. Code §46A-2-127, Defendant argues that "alleged internal accounting errors" do not constitute collection activity within the scope of the act. In support of its argument, Defendant cites *Parola v. Citibank (South Dakota) N.A.*, 894 F. Supp. 2d 188 (D. Conn. 2012). First, *Parola* is an out of district case that does not involve the WVCCPA. Second, the issue in *Parola* was not the misapplication of the consumer's payments in a manner which benefited the collector, such as charging more interest than is otherwise owed, as are the allegations at issue here. The allegations in *Parola*, regarding misleading representations, had to do with credit reporting and the bank's alleged misleading report made to the credit reporting agencies, not that the debt collector collected anything. *See Parola* at 204 ("Parola only alleges that Citibank reported the late payment on her consumer credit report and has not alleged that Citibank has attempted to collect the debt.").

In this case, it's not disputed that MOHELA did collect a debt from Mr. Price. Its own records confirm that it collected payments in January and February 2012, and that it applied all of those payments to interest rather than applying any to principal. MOHELA then attempted to collect excess interest from Mr. Price. The question raised by Defendant is whether the alleged misapplication of those payments, as alleged by Mr. Price, could ever constitute a violation of the WVCCPA; and, specifically, §46A-2-127. To answer that question, we look to the definition of "debt collection" at W.Va. Code §46A-2-122: "any action, conduct or practice of soliciting claims for collection **or in the collection of claims owed** or due or alleged to be owed or due by a consumer." (emphasis added). Misapplication of payments certainly seems to this Court to be firmly within the scope of "any action, conduct, or practice … in the collection of claims owed."

Solicitation is not necessary, but it is also within the scope of debt collection. Furthermore, as the definition of "debt collector" in §122(d) makes clear, actionable conduct includes debt collection by both direct and indirect means. This conclusion is further supported by the myriad of binding cases requiring that we interpret the WVCCPA broadly to provide an avenue of relief to consumers who may not have a more traditional cause of action.[2] Moreover, the misconduct here does not end with the misapplication of payments but continues with the subsequent collection of excess interest resulting from the misapplication.

In conclusion, the misapplication of payments and the charging of excess interest may constitute debt collection as that term is defined at W.Va. Code §4 A-2-122(c). That statute makes clear that debt collection is not limited to the mere solicitation of payments, but also applies to any "action, conduct, or practice" in the actual collection of the claims owed, which necessarily includes the application of payments made to the debt collector. To find in the alternative, as urged by Defendant, would be to make a finding contrary to the remedial purpose of the Act.

### B. PLAINTIFF'S CLAIMS ARE PREMISED UPON THE CLAIM THAT HE NEVER MISSED A PAYMENT

Defendant's next argument is that it is required by federal regulation to apply payments "first to accrued charges and collection costs, then to any outstanding interest, and then to outstanding principal." Defendant's Memorandum in Support of its Motion for Summary Judgment at 6. Thus, Defendant argues, its application of the January and December payments was proper *because* Defendant claims Mr. Price failed to make a payment in November and December 2011.

---

[2] *See State ex rel. McGraw v. Scott Runyan Pontiac-Buick, Inc.*, 194 W. Va. 770, 777, 461 S.E.2d 516, 523 (1995) ("As suggested by the court in *State v. Custom Pools*, 150 Vt. 533, 536, 556 A.2d 72, 74 (1988), "[i]t must be our primary objective to give meaning and effect to this legislative purpose." Where an act is clearly remedial in nature, we must construe the statute liberally so as to furnish and accomplish all the purposes intended. *Kisamore v. Coakley*, 190 W.Va. 147, 437 S.E.2d 585 (1993) (per curiam); *Hubbard v. SWCC and Pageton Coal Co*., 170 W.Va. 572, 295 S.E.2d 659 (1981); *Wheeling Dollar Savings & Trust Co. v. Singer*, 162 W.Va. 502, 250 S.E.2d 369 (1979).").

For his part Mr. Price reiterates his claim that he never missed a payment. Indeed, this is the crux of the dispute between the parties and the basis of Plaintiff's Motion for Partial Summary Judgment. If those payments were made, as alleged by Mr. Price, then Defendant's argument fails because there could not have been accrued charges, collection costs, or outstanding interest sufficient to justify applying all of the January and February 2012 payments to interest only. Therefore, there remains a material issue of fact which precludes summary judgment on this issue.

## C.    REGULAR MONTHLY STATEMENTS MAY VIOLATE THE WVCCPA

Here, Defendant makes two alternative arguments. First, Defendant claims that because regular monthly statements are essentially informational disclosures that are required to be sent to consumers under federal law, that requirement expressly preempts any state law debt collection claims. Alternatively, Defendant argues that even if the WVCCPA is not preempted, regular monthly statements are not "debt collection activity" within the scope of the WVCCPA. For the reasons set forth below, neither theory is persuasive.

### 1.    There is No Preemption of False or Misleading statements in Regular Monthly Statements.

In making its argument, Defendant is very specific that it is arguing that "express" preemption, rather than implied or conflict preemption, applies to regular account statements required to be sent under federal law. "While not 'rigidly distinct' categories, there are three classes of preemption: (1) express preemption, (2) conflict preemption, and (3) field preemption." *Pennsylvania v. Navient Corp.*, 967 F.3d 273, 287 (3d Cir. 2020) (Citing *Va. Uranium, Inc. v. Warren*, 587 U.S. ——, 139 S. Ct. 1894, 1901, 204 L.Ed.2d 377 (2019). "Express preemption applies where Congress explicitly preempts state law in the statutory language." *Pennsylvania* at 287 (referencing *Cipollone v. Liggett Grp., Inc.*, 505 U.S. 504, 516, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992)). As stated in *Cipollone*:

Congress' intent may be **explicitly stated in the statute's language** or implicitly
contained in its structure and purpose… In the absence of an express congressional
command, state law is pre-empted if that law actually conflicts with federal law…
or if federal law so thoroughly occupies a legislative field as to make reasonable
the inference that Congress left no room for the States to supplement it.

Id. at 516, 2617, 407 (emphasis added). *Cipollone* thus succinctly defines the three types of

preemption (express, conflict, and implied), and makes it clear that express preemption requires

explicit language. Also, the "'starting presumption,' is that 'Congress does not intend to supplant

state law.'" *College Loan Corp. v. SLM Corp.*, 396 F.3d 588, 597 (4th Cir. 2005).

Our Supreme Court has looked at preemption of the WVCCPA and found that there is no

general preemption of the entire WVCCPA. *See Adams v. Pa. Higher Educ. Assistance Auth.*, 237

W. Va. 312, 787 S.E.2d 583 (W. Va. 2016). In *Adams*, the Court analyzed §46A-2-127(d)

specifically, and found there is nothing in the state law prohibiting false or misleading statements

that would conflict with or frustrate the federal obligations of student loan servicers under the

HEA:

We find the Eleventh Circuit's reasoning compelling. There would appear to be
nothing which would conflict with or frustrate the requirements and purposes of the
HEA and FFELP by also precluding under State law, making a "false
representation" about the "character, extent or amount" of a debt. While certain due
diligence collection activities are required by the FFELP regulations, making "false
representations" about the nature of a debt is certainly not one of them.

*Adams* at 321, 592 (2016). If there is no conflict preemption of §46A-2-127, then clearly there is

no express preemption.

Nonetheless, Defendant cites three cases in support of its express preemption argument:

*Chae v. SLM Corp.*, 593 F.3d 936 (9th Cir. 2010); *Nelson v. Great Lakes Educational Loan*

*Services*, Inc., 928 F.3d 639 (7th Cir. 2019); *Lawson-ross v. Great Lakes Higher Educ. Corp.*, 955

F.3d 908, 917 (11th Cir. 2020). None of these cases are persuasive because they very clearly

differentiate between state disclosure laws and affirmative misrepresentations. Conflicting state disclosure requirements are likely preempted, whereas affirmative misrepresentations are not.

The Plaintiffs in *Chae* did not allege specific false or misleading allegations, and instead chose to challenge wholesale the manner in which their loans where administered. They alleged that student loans should not be calculated using simple daily interest, that late fees should not be assessed, and that interest should not be assessed from the date of disbursement. Each of these challenges was based on California state law, and the Court had little difficulty finding that Congress intended to establish a uniform system for administering these loans and that any state regulation that conflicts with that uniformity is preempted under conflict preemption. *Chae* at 950 ("conflict preemption prohibits the plaintiffs from bringing their remaining claims because, if successful, they would create an obstacle to the achievement of congressional purposes."). But Mr. Price does not allege that West Virginia law requires Defendant to calculate his interest differently than borrowers in other states, he alleges that Defendant simply misapplied his payments as it should have for every borrower in every state;

Turning to *Nelson*, the Seventh Circuit also drew a sharp distinction between state-specific disclosure claims and claims alleging false or misleading statements. The Court found that while state-specific disclosure requirements are expressly preempted, this preemption does not extend to affirmative misrepresentations:

> …[T]he HEA's preemption of state-law "disclosure requirements" does not bar entirely her attempt to use Illinois consumer-protection and tort law. Nelson complains of false and misleading statements that Great Lakes made voluntarily, not required by federal law. Imposing liability for those voluntary but deceptive statements does not impose additional "disclosure requirements" on Great Lakes.

*Nelson* at 648–49. The court went on to analyze Plaintiff's affirmative misrepresentation claims under conflict and field (implied) preemption analysis and likewise found that neither applied. *Nelson* at 650 ("Conflict preemption does not bar Nelson's claims') and 651-2 ("field preemption

does not apply here."). Mr. Price has not alleged that Defendant make any additional disclosures specific to West Virginia consumers. His allegations are more accurately described as affirmative misrepresentations stemming from the alleged misapplication of his payments.

Finally, *Lawson-Ross* also draws the distinction between state required disclosures and affirmative misrepresentations. The Court went a step further and rejected the Defendant's attempts to mischaracterize Plaintiff's affirmative misrepresentation claims as failure to disclose claims in an attempt to obtain a preemption finding:

> The Borrowers' complaint attempts to impose state disclosure requirements on servicers, Great Lakes argues, because their affirmative misrepresentation claims, at their core, are based on a failure to disclose correct information. We reject Great Lakes's characterization of the Borrowers' claims and its argument that § 1098g so broadly preempts state law. We conclude that the precise language Congress used in § 1098g preempts only state law that imposes disclosure requirements; state law causes of action arising out of affirmative misrepresentations a servicer voluntarily made that did not concern the subject matter of required disclosures impose no "disclosure requirements."

*Lawson-ross* at 916–17. Defendant makes a similar argument in its Motion in that it attempts to characterize Plaintiff's affirmative misrepresentation claims as a failure to disclose. Such an argument is not persuasive where Mr. Price's claims are so firmly rooted in Defendant's alleged misapplication of his payments and subsequent efforts to collect an inflated amount of interest. He makes no claims that Defendant had any duty under West Virginia law to provide him with additional or more specific disclosures about his loan.

The Fourth Circuit Court of Appeals had recent occasion to determine if federal statutes abrogated state consumer protection rights and ruled in the negative. *Guthrie v. PHH Mortg. Corp.*, 79 F.4th 328 (4th Cir. 2023), cert. denied, No. 23-785, 2024 WL 1839108 (U.S. Apr. 29, 2024). The guidance in *Guthrie* and robust analysis regarding preemption is instructive in the instant case. The primary issue on appeal in *Guthrie* was whether the Bankruptcy Code preempts state law causes of action for alleged unfair collection of a debt that had been discharged in bankruptcy. The

Fourth Circuit held that the Bankruptcy Code did not preempt Guthrie's state law consumer protection claims related to the alleged improper collection of a discharged debt. The Court of Appeals started with the presumption that federal law does not intend to preempt state law except in the limited circumstances of express, field or conflict preemption. *Id.* at 336-7. Ultimately, the Court of Appeals found that "the answer to that question is easy" as a "creditor can comply with both the discharge injunction and the state law on which Guthrie's claims are based by not seeking to improperly collect debts discharged in bankruptcy." *Id*. at 337.

Express preemption does not apply to Mr. Price's claims because Congress expressed no explicit intent for the HEA to preempt state consumer protection laws. Likewise, field or implied preemption does not apply because the HEA does not so thoroughly occupy the field of consumer protection that Congress left no room for supplementation. Plaintiff's claims are therefore not preempted under any implied preemption theory. *See generally Adams*. All that's left is conflict preemption, and there simply is no conflict in requiring Defendant to send information in regular monthly statements under federal law, and also requiring that that information be accurate under West Virginia law.

### 2. Regular Monthly Statements fall within the scope of the WVCCPA

Defendant argues that even if the WVCCPA is not preempted, regular monthly statements are not "debt collection activity" within the scope of the WVCCPA because they are required to be sent under the HEA. In support of this argument, Defendant cites three cases from Florida[3] and two from the Northern District of West Virginia: *Rice v. Green Tree Servicing, LLC*, No. 3:14-cv-

---

[3] *Jones v. Select Portfolio Servicing, Inc*., No. 1:18-cv-20389, 2018 WL 2316636 (S.D. Fla. May 2, 2018); *Brown v. Select Portfolio Servicing, Inc*., No. 16-62999, 2017 WL 1157253 (S.D. Fla. Mar. 24, 2017); and *Green v. Specialized Loan Servicing LLC*, 280 F. Supp. 3d 1349 (M.D. Fla. 2017).

93, 2015 WL 5443708 (N.D.W.Va. Sept. 15, 2015) and *Perrine v. Branch Banking and Trust Co*., No. 2:17-cv-70, 2018 WL 11372226, at *5 (N.D.W. Va. Sept. 25, 2018).

Looking first to *Rice*, although the Court did find that regular monthly statements in that case may not be subject to the WVCCPA, it did so only after acknowledging that the issue in that case was fundamentally novel and an issue of first impression. Thus, the Court in Rice didn't necessarily find that regular account statements were not "debt collection." Rather, the *Rice* Court found that the statements were not false or misleading because that novel issue hadn't been resolved prior to that case.[4] The issue in this case is not novel, or one of first impression; and the Court declines the opportunity to adopt a blanket rule that regular monthly statements are outside the scope of the WVCCPA. *Perrine* makes the same conclusion reached in *Rice* without any analysis of the language of §46A-2-122. Perrine at *5. The *Perrine* and *Rice* courts were both applying the recent Truth and Lending Act regulation without much guidance from other courts. Since then, the premise of *Perrine* and *Rice*, that because the statements are required by federal regulation they are informational and cannot be debt collection, has been widely rejected.[5]

In his Response, Mr. Price directs the Court to the very recent case of *Tederick v. LoanCare, LLC*, No. 2:22-CV-394, 2024 WL 1223446, at *12–13 (E.D. Va. Mar. 21, 2024). In *Tederick*, Plaintiffs made a similar claim – that their payments were misapplied and they received

---

[4] "The dispute that subsequently arose concerning the proper interpretation of the applicable provisions of the HPA was presented to this Court as a matter of first impression. As discussed in detail above, the Court finds that the Defendant's interpretation of federal law was incorrect. But the Defendant's conduct was not fraudulent, deceptive or misleading, as required for this Court to find a violation of West Virginia law." *Rice* at *12.

[5] *See, e.g.*, *Daniels v. Select Portfolio Serv., Inc*., 34 F.4th 1260 (11th Cir. 2022) (misrepresentations of amounts due in statements are actionable under FDCPA); *Lamirand v Fay Servicing, LLC*, 38 F.4th 976, 980 (11th Cir. 2022) (FDCPA claims premised on monthly statements "can survive a motion to dismiss so long as their complaint alleges that the statements plausibly 'aim[ed],' 'at least in part,' to induce them to pay."); *Cooke v. Carrington Mortg. Servs*., 2018 WL 6323116, at *4 (D. Md. Dec. 3, 2018) (overcharges on monthly mortgage statement constituted viable FDCPA claim); *Block v. Seneca Mortg. Servicing*, 221 F. Supp. 3d 559 (D.N.J. 2016) (finding that the FDCPA applied to "monthly statements from Defendant Ocwen with erroneous information concerning the interest owed on her loan and the tax and insurance escrows on her loan").

regular monthly statements that violated §46A-2-127. The Defendant debt collector moved to dismiss the claims insofar as they were based on regular monthly statements based on *Perrine*, but the Court declined the opportunity to embrace a blanket rule exempting regular monthly statements from the WVCCPA:

> Although the Tedericks' silence regarding *Rice* and ***Perrine*** does not help their claims, the Court declines to fashion a new rule that forecloses parties from stating a claim under the WVCCPA based on allegedly false billing statements. In this case, the Tedericks have pled facts plausibly alleging that the monthly statements are a "false representation ... of the character, extent or amount of a claim against" them. W. Va. Code § 46A-2-127(d). The Second Amended Complaint sufficiently identifies the allegedly fraudulent billing statements, the dates on which LoanCare sent those statements, and how LoanCare allegedly misapplied their combined payments.

*Id*. at *12-13.

As for the three Florida district court cases, the eleventh circuit has effectively, if not expressly, overruled them. *See Daniels v. Select Portfolio Servicing, Inc*., 34 F.4th 1260 (11th Cir. 2022). Therein, the Court reached the opposite conclusion of those cases finding that "a communication can 'have dual purposes,' such as providing a consumer with information and demanding payment on a debt." The Daniels court concluded that "[W]hether a communication was sent 'in connection with' an attempt to collect a debt is a question of objective fact, to be proven like any other fact" and the TILA regulations requiring certain information in statements do not alter the general analysis.

The approach the Court took in *Daniels* is consistent with WVCCPA. *See*, *McNeely vs. Wells Fargo Bank, NA*, 115 F.Supp.3rd 779, 787 (S.D. W.Va. 2015) ("the question under § 46A–2–127 is not a subjective one. Rather, the statute lists conduct that "is deemed to violate this section" and includes in that list "[a]ny false representation or implication of the character, extent or amount of a claim… The [letter at issue] inaccurately stated the duration of the loan modification agreement. It is up to the factfinder to determine whether, in these circumstances, the letter

constitutes a false representation prohibited by the WVCCPA.").  As applicable here, §127(d) specifically prohibits a debt collector from making "*any* false representation or implication." Here, misrepresentations included in monthly billing statements fall within the gambit of "any."  In *Thomas v. Firestone*, the WVSCA addressed the meaning of the word "any" in the context of the WVCCPA and ruled, unsurprisingly, that the word "any" means "any." *Thomas v. Firestone Tire & Rubber Co.*, 266 S.E.2d 905, 909 (W. Va. 1980).  When the Legislature intends to exclude regular account statements from the scope of the WVCCPA, it does so expressly.

Neither *Rice* nor *Perrine* even considered the 2015 amendments to the WVCCPA, which took effect after the summary judgment motions were filed in *Rice*, that exempted "[r]egular account statements" from constituting prohibited communications under section 128 but providing no such exemption for section 127.  *See also*, *Manning v. Wells Fargo Bank, N.A.*, 2009 WL 10709758, at *6 (N.D.W. Va. Sept. 24, 2009) ("This Court finds that plaintiffs may still have a claim under § 46A-2-127. This is because if defendant sent plaintiffs statements including charges for "unauthorized and illegal fees" the statement could be found to be a "representation" by defendant that the illegal fees were due and owing.").  The *Manning* decision represents the more reasonable approach, especially in light of the broad definition of "debt collection" in §46A-2-122, the express language used in §46A-2-127 ("any… representation or means") and our precedent requiring broad interpretation of the Act. Therefore, regular monthly statements, even those required to be sent under federal law, may fall within the scope of the WVCCPA if a trier of fact determines that the statements is a "fraudulent, deceptive or misleading representation or means" to collect or attempt to collect from a consumer.

Therefore, for the reasons set forth above, Defendant's Motion for Summary Judgment as to Count I of Plaintiff's Complaint is hereby **DENIED**.

### D.    BREACH OF CONTRACT

Finally, Defendant argues that because there was never any contract between it and Mr. Price, there is no privity of contract and Mr. Price's breach of contract claims must be dismissed. In response, Mr. Price first points out that Defendant admitted it had a contractual obligation to comply with the terms of the loan contract in its Answer. "MOHELA admits that the promissory notes memorialize the terms of the loan and that it is the obligation of both Plaintiff and MOHELA to comply with the loan terms." Answer at 3. Mr. Price next directs the Court to Defendant's discovery responses wherein Defendant objects to producing "the original contract or contracts that Defendant alleges obligates the Plaintiff to pay money on the account or accounts Defendant sought to collect upon from Plaintiff." Mr. Price argues that Defendant cannot on the one hand admit it has a duty to comply with a contract in collecting Mr. Price's debt, and then object to providing the contract on the other hand.

Alternatively, Mr. Price argues that even if privity of contract is a fundamental element of his claim, then amendment is appropriate if the same set of facts establish another cause of action. Rule 15(a) of the WVRCP demands that leave to amend "shall be freely given when justice so requires." Further, Rule 15(b) dictates that the pleading shall conform to the evidence:

> Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure so to amend does not affect the result of the trial of these issues. If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice the party in maintaining the party's action or defense upon the merits.

Mr. Price contends that amendment would not prejudice Defendant in that no new facts are being alleged, and that if a breach of contract is not proper, then another cause of actions such as fraud, tortious interference, or negligence.

*Page 18 of 19*

The Court notes that under Rule 15(b) amendment may take place at any time, even after trial and the right to amend is to be liberally construed. *See Holiday Plaza, Inc. v. First Fed. Sav. & Loan Ass'n of Clarksburg*, 168 W. Va. 356, 360, 285 S.E.2d 131, 133 (1981) (Citing *Tennant v. Craig*, 156 W.Va. 632, 195 S.E.2d 727 (1973)). Further, the Court believes that the issue of Defendant's contractual obligations will likely be flushed out more at trial. Therefore, Defendant's Motion for Summary Judgment as to Count II is **DENIED**.

### E.    PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Turning now to the Plaintiff's Motion, the Court is constrained to deny the same for many of the reasons set forth above. Plaintiff's Motion is limited to only some of the violations alleged in this action, but each of the violations Mr. Price asks the Court to find hinge on whether the regular account statements contain false or misleading information. While such statements *may* violate the WVCCPA, the ultimate determination of whether such statements *do* violate the Act is, on the present record, a question for the trier of fact who must determine what payments were in fact made.

Therefore, Plaintiff's Motion for Partial Summary Judgment is **DENIED**.

Entered this _____ day of _____, 2024.

_____
The Honorable Joseph K. Reeder, Circuit Judge
29th Judicial Circuit

Prepared By:

/s/ Steven R. Broadwater, Jr.
Steven R. Broadwater, Jr. (*W. Va. Bar #11355*)
Steve@BroadwaterLawGroup.com
BROADWATER LAW GROUP, PLLC
P.O. Box 1636
417 Main St E
Oak Hill, WV 25901
(304) 574-2727
*Counsel for Plaintiff*